UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| SERGIO VAZQUEZ, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:07-CV-130-TLS |
| ALLEN COUNTY SHERIFF KENNETH FRIES (Representative Capacity), JEFF SHIMKUS, MICHAEL SMITH, GABRIEL FURNISH, MICHAEL SMOTHERMAN, JEREMY REPAAL, JAMES BROOKS, and MELANIE THOMPSON, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The Plaintiff, Sergio Vasquez, sued members of the Allen County Sheriff's Department and the United States Marshal's Service after he was arrested outside his home on April 17, 2006. This matter is before the Court on the Federal Defendants' Motion for Summary Judgment [ECF No. 75], filed by Deputy United States Marshals James Brooks and Melanie Thompson on April 19, 2010. In response to the Federal Defendants' Motion for Summary Judgment, the Plaintiff states that, upon further review of his claims, he will only pursue a claim against Deputy Brooks and will not proceed further on his claim against Deputy Thompson. (Mem. in Support of Pl.'s Resp. in Opp'n 5–6, ECF No. 87.) As for his cause of action against Deputy Brooks, the Plaintiff limits his claims to unlawful entry into, and search of, his home in violation of his rights under the Fourth Amendment and *Bivens v. Six Unknown Named Agents of*

*the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Accordingly, the Court grants Deputy Thompson's motion for judgment as a matter of law and grants Deputy Brooks's motion with respect to the claim for excessive force. For the reasons stated in this Opinion and Order, the Court also grants summary judgment in favor of Deputy Brooks for the remainder of the Plaintiff's Fourth Amendment claims.

**BACKGROUND**

On April 30, 2007, the Plaintiff filed a Complaint against Allen County Sheriff Kenneth Fries in his representative capacity and against Officer Jeff Shimkus and other unnamed officers who participated in arresting him at his home on April 17, 2006. The Allen County Sheriff's Department Defendants filed an Answer and a Notice of Removal of the case to federal court. On April 7, 2008, the Plaintiff filed an Amended Complaint adding Allen County Sheriff Officers Michael Smith, Gabriel Furnish, Michael Smotherman, and Jeremy Repaal in their individual capacities and Deputies Brooks and Thompson in their individual capacities. The Plaintiff alleges that the Defendants violated his Fourth Amendment rights when they entered his home without a search warrant or permission and seized property within the home. He also alleges that he was falsely arrested and maliciously prosecuted when Officer Shimkus fabricated evidence in an affidavit in support of probable cause, which caused the Plaintiff's wrongful

---

[1] The Plaintiff cites ~~to~~ *Bivens* in his Amended Complaint as the basis for his claims against the Marshal's Deputies. In his Memorandum in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, the Plaintiff purports to proceed on a Fourth Amendment claim pursuant to 42 U.S.C. § 1983. (Pl. Mem. 5–6, ECF No. 87.) Because § 1983 only provides a cause of action against those acting "under color of state law" and the Defendants are federal agents, and because the Amended Complaint cites to *Bivens*, the Court considers the reference to § 1983 in the Memorandum to be an inadvertent mischaracterization of the Plaintiff's claim.

arrest for the crime of failing to register as a sex offender. Finally, he alleges that the Defendants used excessive force when they pointed their guns at him and members of his family.

All the Defendants have answered the Amended Complaint and all have moved for this case to be summarily decided in their favor pursuant to Federal Rule of Civil Procedure 56(c). The Federal Defendants moved for summary judgment on April 19, 2010, and the Allen County Sheriff's Department Defendants filed their motion on April 28. Both motions are fully ripe. This Opinion and Order addresses only the Federal Defendants' Motion.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure state that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.

Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp*., 168 F.3d 998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## STATEMENT OF FACTS

The United States Marshals Service periodically conducts national fugitive round-ups to apprehend state and federal fugitives. Multi-jurisdictional task forces comprised of federal, state, and local law enforcement officers undertake these apprehensions. In April 2006, Deputies Brooks and Thompson participated in such a round-up, having been assigned to the fugitive task

4

force for northern Indiana with four members of local law enforcement.

On Monday, April 17, 2006, Deputies Brooks and Thompson prepared to execute an arrest warrant for the Plaintiff, Sergio Vazquez, and went to his home at 3521 Oliver Street in Fort Wayne, Indiana, with other members of the task force. Other officers, not including Deputies Brooks and Thompson, looked for Vazquez at his house earlier in the day. When they arrived to arrest the Plaintiff, he was outside his home with his one-year-old son. The Plaintiff was arrested and handcuffed without incident. He asked that Deputy Thompson take his wallet and keys to his wife, who was inside the house, so that she could later bail him out of jail.

Deputy Thompson agreed and entered the house through a side door. At this entrance, a person must go through two doors before entering the living area of the home. After passing through the first door, one can either proceed down to the basement or up stairs through a second door and into the house. The Plaintiff's wife, Mrs. Vazquez, recalled a white male officer entered the house first and looked around the room moving his gun slowly from side to side.[2] Deputy Thompson followed, bringing Mrs. Vazquez's crying son. Mrs. Vazquez does not remember receiving the keys or wallet, but they were later in their typical place on a counter top inside the house. The white officer and Deputy Thompson were the only two officers that Mrs. Vazquez saw enter the house. When she was at the side door retrieving her son, Mrs. Vazquez observed Deputy Brooks outside the house in the doorway near the basement steps with his gun drawn, but pointed down. Deputy Brooks had unholstered his gun after Deputy Thompson went toward the house to deliver the wallet and keys. The Plaintiff inquired why Deputy Brooks was taking

---

[2] The white male was one of the local law enforcement officers. Both Deputy Thompson and Deputy Brooks are black (African-American).

out his gun and going to the house and Deputy Brooks responded that he felt threatened. According to the Plaintiff, Deputy Brooks went "down into the basement" after he entered the first door. (Pl. Dep. 43, ECF No. 76-1.)

The Plaintiff kept a locked safety box in one of the bedroom closets, and when he returned home from jail after being bailed out, he found it unlocked on his bed.[3]

## DISCUSSION

The Plaintiff maintains that Deputy Brooks's entry into his house without a warrant and without permission violated his rights under the Fourth Amendment. The Plaintiff acknowledges that he gave Deputy Thompson consent to enter his home for the limited purpose of returning his keys and wallet to his wife (Pl. Mem. 6, ECF No. 87), but argues that "[s]ince it does not take more than one person to walk a wallet and set of keys from one person to another, implied consent to enter the home at most was given only to Thompson" (*Id.* 6–7). The Plaintiff acknowledges that protective sweeps are a recognized exception to the warrant requirement, but argues that it does not apply to Deputy Brooks's actions because he had no reason to believe that anyone inside the house posed a threat to those at the scene of the arrest.

Deputy Brooks submits that he is entitled to qualified immunity because, after the Plaintiff gave Deputy Thompson permission to enter the home, it was reasonable for him to follow her to the entrance of the home to ensure her safety, particularly because she was

---

[3] According to the Plaintiff, his wife told him that she did not unlock the box. The Defendant attempts to use his wife's statement as proof that one of the Defendants must have opened the safety box. However, Mrs. Vazquez's statement, as repeated by her husband, is not a part of the record and cannot be used for the truth of the matter—that the Plaintiff's wife did not open it—because it is hearsay. Fed. R. Evid. 801(c); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

6

preoccupied with carrying the Plaintiff's young child. He argues that there is no credible evidence to suggest that he entered the main living area of the home, and thus no support for any claim that he opened the safety box.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is "to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). When confronted with a claim for qualified immunity, a court must address two questions: (1) whether the plaintiff's allegations make out a deprivation of a constitutional right; and (2) whether the right was clearly established. *Id.*; *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). The court may address these prongs in whichever order is best suited to the circumstances of the particular case. *Pearson*, 129 S. Ct. at 818; *McAllister*, 615 F.3d at 881. For a right to be clearly established, its "'contours . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* at 884–85 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted)). In ascertaining whether a right is clearly established, this Court looks to controlling Supreme Court and Seventh Circuit precedent. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009).

The Fourth Amendment to the United States Constitution protects the right of the people

"to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The sanctity of the home is a central concern of the Fourth Amendment. It is therefore 'a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *United States v. Etchin*, 614 F.3d 726, 733 (7th Cir. 2010) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted)); *Hadley v. Williams*, 368 F.3d 747, 750 (7th Cir. 2004) (stating that, in the absence of consent or compelling circumstances, a warrant is required for entry into the home). "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 628 (7th Cir. 2008) (quotation marks omitted). This expectation of privacy is the "hallmark of Fourth Amendment analysis," and it is the government's "unlawful *invasion* of this privacy that gives rise to a Fourth Amendment violation." *Bentz v. City of Kendallville*, 577 F.3d 776, 782 (7th Cir. 2009) (emphasis in original).

One exception to the Fourth Amendment's prohibition on warrantless searches of a person's home is a search incident to arrest. *See Chimel v. California*, 395 U.S. 752 (1969). Under this exception police officers may, incident to arrest, conduct a plenary search of the arrestee's person and the area within his immediate control. *Id.* at 736. Another exception is the protective sweep first described in *Maryland v. Buie*, 494 U.S. 325, 331 (1990), which allows officers, incident to arrest and "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched," *id.* at 334. "A search beyond those parameters is justified when there are 'articulable facts which, taken together with the rational

inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" *Peals*, 535 F.3d at 627 (citing *Buie*, 494 U.S. at 334). Officers have an interest in ensuring their safety when they lawfully enter a house, which justifies allowing them to verify "that the dwelling does not harbor another person who is dangerous and who unexpectedly could launch an attack." *Leaf v. Shelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005) (citing *United States v. Burrows*, 48 F.3d 1011, 1015–16 (7th Cir. 1995)) (explaining policy concerns behind the protective sweep exception to the warrant requirement). In determining the reasonableness of a protective sweep, an individual's Fourth Amendment interest—i.e., his expectation of privacy—must be balanced against legitimate governmental interests. *Buie*, 494 U.S. at 331. Whether a protective sweep is reasonable is a fact specific inquiry. *Leaf*, 400 F.3d at 1087; *Burrows*, 48 F.3d at 1016 (stating that the inquiry is very fact specific and requires that the circumstances of a particular encounter be assessed carefully in light of the overarching policy concerns articulated in *Buie* and other cases recognizes exceptions to the warrant requirement when officer safety is at risk). The protective sweep is "not a full search of the premises" and "may extend only to a cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335.

In light of the recognized and legitimate government interest in ensuring officer safety, it is not clearly established that Deputy Brooks's actions violated the Plaintiff's Fourth Amendment privacy rights. That is, it is not clearly established that once a person is arrested outside his house, and the arrestee asks one of the officers on the scene to enter the dwelling on his behalf, a second officer violates the Fourth Amendment if he accompanies her to the entrance and remains outside the main living area of the home to assess and potentially respond to any

dangers to her safety. The Plaintiff argues that searches and seizures inside a home without a warrant are unreasonable and that there were no circumstances justifying a protective sweep. However, the Plaintiff's citation to broad and well-known principles of Fourth Amendment jurisprudence do not fit the facts of this case. Immediately following his arrest, the Plaintiff asked Deputy Thompson to go inside the house where his wife was located. It is unclear what expectation of privacy Deputy Brooks invaded when he stayed behind and further outside the living area of the home than Deputy Thompson. Additionally, Deputy Brooks did not actually come inside the home and perform a cursory inspection of spaces where a person could be found. The testimony from Mrs. Vazquez, who was standing in the doorway where she could see Deputy Brooks, was that he remained outside the living area at all times.

The Plaintiff lacks personal knowledge about the officer's actions once inside his home. Only Mrs. Vazquez and the officers have that knowledge. In addition, because he was outside the house, the Plaintiff does not have personal knowledge whether Officer Brooks went all the way down the steps into the basement, as opposed to descending a few steps, or how long he stayed there. Testimony must concern matters within a deponent's personal knowledge. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). A court can find that evidence is inadmissible and not consider it on summary judgment where the court "finds that the witness could not have actually perceived or observed that which he testifies to." *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)). Even if Deputy Brooks did descend some stairs to the basement or go into the basement, it remains

undisputed that he never entered the living area of the home and that, when Mrs. Vazquez saw him, he was not in the basement but was standing "in the door by the basement" and "beside the door outside." (Ericka Vazquez Dep. 44, ECF No. 76-2.)

This limited intrusion by Deputy Brooks must be weighed against the government's legitimate interests. Deputy Brooks knew that he had just been involved in arresting a man outside his house pursuant to an arrest warrant and the man then asked another Deputy Marshal to return items to his wife inside the home. Deputy Brooks agreed and, by the time she entered the side door, she was also carrying the Plaintiff's young, crying child. Members of the task force had been at the house earlier in the day looking for the Plaintiff, but he was not home. This time, the Plaintiff was outside the house when the task force arrived, so the officers did not have reason to enter the house upon first arriving. Deputy Brooks could not have known who, in addition to the Plaintiff's wife, may have been inside the house where the Plaintiff asked Deputy Thompson to enter.

Consistent with the nature of his legitimate interest in protecting Deputy Thompson, Deputy Brooks did no more than position himself behind Deputy Thompson, either so he could view the area where Deputy Thompson had a lawful right to be, or to block another point of attack—the basement. He did not even enter the living area of the home (perhaps because another officer had already entered the house ahead of Deputy Thompson to sweep the room, but the reason is not important). It was not unreasonable for Deputy Brooks, as a precautionary matter and without probable cause, to act on the possibility that a person could have been situated inside the house to launch an attack. The Seventh Circuit's decision in *Peals*, 535 F.3d at 628, supports this conclusion. In *Peals*, the court held that officers did not violate the Fourth

Amendment when, after arresting the plaintiff in his garage, they looked around the garage and entered the house, an immediately adjoining space in which another person might be located and from which they could launch an attack. *Id.* The officer who entered the house did not need articulable facts to justify his entry even though the police had already taken the plaintiff into custody. *Id.* Likewise, here, the Plaintiff's arrest was not so far removed, either in time or physical distance, from the house that it would have been apparent to Deputy Brooks that he could not follow Deputy Thompson and minimally intrude on the Plaintiff's privacy "to protect the safety of police officers, who have an interest in ensuring their safety when they lawfully enter a house." *Id.* Accordingly, Deputy Brooks is entitled to qualified immunity and to judgment as a matter of law on the claim that he violated the Plaintiff's Fourth Amendment rights. Additionally, the Court has not been presented with any admissible facts from which a reasonable jury could conclude that Deputy Brooks searched the safety box inside the house, and he is entitled to summary judgment on that claim as well.

The Plaintiff has abandoned his claims against Deputy Thompson, to whom he gave consent to enter his home. With regard to the claim that Deputy Brooks unlawfully entered the Plaintiff's home, the record of admissible evidence shows that there is no genuine issue as to any material fact, and that he is entitled to qualified immunity and to judgment as a matter of law. Finally, there are no facts to support a claim that he searched items inside the house.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Federal Defendants' Motion for Summary Judgment [ECF No. 75].

SO ORDERED on November 16, 2010.

                                             s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT